J-S41021-25
J-S41022-25
J-S41023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                :         PENNSYLVANIA

             Appellant        :

                                                :

                         v.               :

                                              :

MWANGI SEKOU                 :     No. 26 EDA 2024

Appeal from the PCRA Order Entered December 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1103481-2002

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                :         PENNSYLVANIA

             Appellant        :

                                                :

                         v.               :

                                              :

MWANGI SEKOU                 :     No. 277 EDA 2024

Appeal from the PCRA Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1103491-2002

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                :         PENNSYLVANIA

             Appellant        :

                                                :

                         v.               :

                                              :

MWANGI SEKOU                 :     No. 323 EDA 2024

Appeal from the PCRA Order Entered January 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1103501-2002

J-S41021-25
J-S41022-25
J-S41023-25

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED DECEMBER 29, 2025**

The Commonwealth of Pennsylvania appeals from the order entered by the Philadelphia County Court of Common Pleas on December 14, 2023, granting Mwangi Sekou's ("Sekou") serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"),[1] vacating his judgment of sentence for his convictions of third-degree murder, carrying a firearm on public streets in Philadelphia, and possessing an instrument of crime at CP-51-CR-1103481-2002 ("third-degree murder docket"), and awarding him a new trial. The Commonwealth also appeals from the orders entered on January 17, 2024, which vacated Sekou's related judgments of sentence for his aggravated assault and recklessly endangering another person convictions at CP-51-CR-1103491-2002 and CP-51-CR-1103501-2002 (collectively, the "aggravated assault dockets"). Because we conclude that the PCRA court erred in determining that Sekou satisfied the newly-discovered fact exception to the PCRA's time bar, we reverse the PCRA court's orders and reinstate his convictions and judgments of sentence.

On July 19, 2002, Sekou shot Gavin Wright ("Wright"), Donald Frazier ("Frazier"), and Tania Cerwithen ("Cerwithen") after Sekou got into an

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

- 2 -

altercation with Wright's sister. Frazier and Cerwithen received treatment for their injuries and ultimately survived, but Wright died from his gunshot wounds. Police arrested Sekou and the Commonwealth charged him at the three above-referenced dockets with first-degree murder, aggravated assault, and related offenses. The case was initially certified as a capital murder trial. The trial court appointed Attorney James Bruno to represent Sekou for trial.

On January 11, 2004, approximately two weeks before trial, Attorney Bruno went to Curran-Fromhold Correctional Facility ("CFCF") to discuss the case with Sekou. When Attorney Bruno arrived at CFCF, however, Sekou informed him that he had retained private counsel, Attorney Todd Henry, to represent him at trial, and consequently, Attorney Bruno left the meeting. A few days prior to trial, Attorney Henry filed a motion to continue the trial to afford him time to gain familiarity with the case and because he was unavailable on the dates set for trial. The trial court denied the continuance motion, finding that Attorney Bruno was prepared for trial and Attorney Henry was not available to represent him. The court also noted that Attorney Robert Fulton had also been working on Sekou's case as mitigation counsel and that Sekou therefore had two attorneys representing him.

On February 8, 2004, following an eight-day trial during which Attorney Bruno represented Sekou, the jury found Sekou guilty of third-degree murder, carrying a firearm on public streets in Philadelphia, possessing an instrument of crime, two counts of aggravated assault, and recklessly endangering

another person. On April 6, 2004, the trial court sentenced Sekou on all three dockets to an aggregate term of thirty-five to seventy-seven years in prison.

On August 31, 2005, this Court affirmed Sekou's judgment of sentence. *See Commonwealth v. Sekou*, 1888 EDA 2004 (Pa. Super. Aug. 31, 2005) (non-precedential decision). On appeal, this Court rejected Sekou's argument that the trial court erred in denying his request for a continuance to allow Attorney Henry time to prepare and make himself available for trial. *Id.* at 5-8. We reasoned that the trial court had already granted Sekou five previous continuances and concluded that he "was not prejudiced because [Attorney Bruno] was prepared for trial, and [Sekou] was convicted only of third[-]degree murder, a significantly lesser charge than the first[-]degree murder charge [he] faced." *Id.* at 7-8. Sekou did not file a petition for allowance of appeal to the Supreme Court of Pennsylvania.

On January 26, 2006, Sekou timely filed his first PCRA petition, raising various claims of ineffective assistance of counsel. Of relevance to the instant appeal, Sekou argued that Attorney Bruno was ineffective for failing to request a voluntary manslaughter jury instruction. The PCRA court denied the petition, finding the record revealed that Sekou, "who was seeking an outright acquittal, told [Attorney Bruno] not to argue or seek a charge on voluntary manslaughter and that [Attorney Bruno] complied with his client's wishes." PCRA Court Opinion, 8/9/2007, at 3. On October 27, 2009, this Court affirmed

the denial of Sekou's first PCRA petition.  *See Commonwealth v. Sekou*, 1836 EDA 2007 (Pa. Super. Oct. 27, 2009) (non-precedential decision).

On July 26, 2012, and October 17, 2014, Sekou filed his second and third PCRA petitions, respectively.  The PCRA court denied both petitions as untimely, finding that Sekou failed to successfully plead and prove an exception to the PCRA's time bar.  This Court affirmed the denial of both PCRA petitions.[2]  *See Commonwealth v. Sekou*, 2183 EDA 2015, 2016 WL 2844832 (Pa. Super. May 13, 2016) (non-precedential decision); *Commonwealth v. Sekou*, 2014 WL 10918073 (Pa. Super. June 25, 2014) (non-precedential decision).

On July 12, 2016, Sekou filed the instant PCRA petition, his fourth, at the third-degree murder docket.  Sekou retained counsel who filed an amended PCRA petition.  In the amended petition, Sekou argued that Attorney Bruno was per se ineffective because Attorney Bruno failed to meet with him prior to trial.  *See* Amended PCRA Petition, 6/23/2017, ¶¶ 17-19.  In an attempt to satisfy the newly-discovered fact exception to the time-bar, he asserted that he had recently discovered from an intra-prison newsletter that on July 18, 2014, the Disciplinary Board of the Supreme Court of Pennsylvania

---

[2] In both PCRA petitions, Sekou plead the newly-discovered fact exception to the PCRA's time bar and sought to introduce evidence that he was not the individual who shot Wright, Frazier, and Cerwithen.  *See Sekou*, 2016 WL 2844832, at *2-3; *Sekou*, 2014 WL 10918073 at *2-3.

("Disciplinary Board") suspended Attorney Bruno for one year after it found that he had violated several Rules of Professional Conduct with respect to his handling of the cases of several clients (none of which were Sekou) for his failure to file responsive pleadings, comply with court orders, file timely appeals, keep clients informed of the status of their cases, and respond to client letters and phone calls. *See id.* ¶¶ 21-43, Exhibit B (Report and Recommendations of the Disciplinary Board, 7/18/2014, ¶ IV). The Disciplinary Board found that Attorney Bruno's mismanagement of his cases and clients was the result of Attention Deficit-Hyperactivity Disorder ("ADHD") and depression. *Id.*, Exhibit B ¶ IV.A.1. Sekou argued he was previously unaware of Attorney Bruno's diagnosis with ADHD and depression, and that these conditions impeded Attorney Bruno's ability to manage his case and communicate with him prior to trial. *See id.* ¶¶ 21-43.

On June 29, 2017, the PCRA court issued notice of its intent to dismiss Sekou's fourth PCRA petition without hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. In its Rule 907 notice, the court explained that Attorney Bruno's allegedly deficient performance, i.e., his failure to meet with Sekou before trial, was not previously unknown to Sekou and that Attorney Bruno's mental health diagnoses several years after Sekou's trial did not constitute a newly-discovered fact for purposes of the PCRA. *See* Rule 907 Notice, 6/29/2017. Following Sekou's response to the PCRA court's Rule 907

notice, the PCRA court scheduled a hearing, which occurred on October 4, 2018.

On February 11, 2019, the PCRA court dismissed Sekou's fourth PCRA petition. On March 11, 2019, he filed a motion for reconsideration, which the PCRA court granted on March 12, 2019.[3] For reasons that are unclear from the record, the case remained dormant for over three years, until Sekou filed another amended PCRA petition on December 13, 2022, raising the same ineffective assistance of counsel claim against Attorney Bruno. The Commonwealth subsequently wrote the PCRA court a letter informing it that its reconsideration of the February 11, 2019 decision remained outstanding.

On December 14, 2023, the PCRA court granted Sekou's PCRA petition, vacating his convictions and judgment of sentence and awarding him a new trial—solely on the third-degree murder docket. On December 21, 2023, the Commonwealth timely appealed to this Court. On January 3, 2024, at all three dockets, Sekou filed a "Motion to Amend order Vacating Conviction to Include All Associated Docket Numbers from the Case," requesting for the PCRA court to vacate his related convictions and judgments of sentence at the aggravated assault dockets. *See* Motion to Amend, 1/3/2024. On January 17, 2024, the PCRA court entered orders at the aggravated assault dockets vacating Sekou's

_____

[3] This order does not appear in the certified record before this Court. The docket, however, reflects that on March 12, 2019, the PCRA court entered an order vacating its decision pending its reconsideration.

convictions and judgments of sentence. Thereafter, the Commonwealth timely appealed those orders. We consolidated all three appeals sua sponte.

The Commonwealth presents the following issues for review:

I. Did the PCRA court err by granting relief and a new trial for third-degree murder on Docket CP-51-CR-1103481-2002, where [Sekou] did not establish an exception to the PCRA time-bar and where his alleged new fact – trial counsel's diagnosis – was unrelated to [Sekou]'s specific, untimely claim of ineffective assistance?

II. Did the [PCRA] court err by granting PCRA relief and a new trial for third-degree murder on Docket CP-51-CR-1103481-2002, where [Sekou]'s claim that trial counsel Bruno was ineffective for not meeting with him before trial had been long known to him and where [Sekou] had, in fact, refused to meet with Bruno when the latter tried to meet with him at the prison?

III. Did the [PCRA] court err by essentially filing a new PCRA petition for [Sekou] and granting relief on two dockets for which [Sekou] himself had never filed petitions for relief, and where the court never evaluated or analyzed trial counsel's ineffectiveness on either of the dockets for which [Sekou] had never filed a petition?

Commonwealth's Brief at 4.

Our standard of review of an order granting "relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa. Super. 2021) (citation omitted). "[W]e defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility."

***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023).  Our standard of review of a PCRA court's legal conclusions, however, is de novo.  ***Id.***

The threshold question we must address is the timeliness of Sekou's fourth PCRA petition and whether he satisfied an exception to the statutory time bar.  ***See Commonwealth v. Brown***, 141 A.3d 491, 499 (Pa. Super. 2016) ("Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition.  Thus, we must first determine whether the instant PCRA petition was timely filed.") (quotation marks and citation omitted).  "The timeliness requirement for PCRA petitions is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition."  ***Id.*** (quotation marks and citation omitted); ***see also Commonwealth v. Fantauzzi***, 275 A.3d 986, 994 (Pa. Super. 2022) ("the timeliness of a PCRA petition is jurisdictional and [] if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief").  The timeliness of a PCRA petition is a question of law, which we review de novo.  ***Commonwealth v. Callahan***, 101 A.3d 118, 121 (Pa. Super. 2014).

The PCRA sets forth the following mandates governing the timeliness of any PCRA petition:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of

- 9 -

the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). A petitioner must file a petition invoking one of these exceptions "within 60 days of the date the claim could have been presented." *Id.* § 9545(b)(2) (effective until Dec. 24, 2018).[4]

---

[4] The General Assembly amended section 9545(b)(2) on October 24, 2018, effective December 24, 2018, extending the time for filing from sixty days of the date the claim could have been first presented to one year. The amendment applied to claims arising on or after December 24, 2017. *See* Act of Oct. 24, 2018, P.L. 894, No. 146, § 3. Sekou filed his fourth PCRA petition on July 12, 2016, and the sixty-day deadline therefore applied to his PCRA petition. We note that Sekou claimed that he discovered information about Attorney Bruno's suspension and mental health diagnoses on January 21, 2016, but did not file his fourth PCRA petition until July 12, 2016, which was beyond the sixty-day deadline. *See* Amended PCRA Petition, 6/23/2017, ¶ 21. The appeal from the denial of Sekou's third PCRA petition, however, was pending before this Court until May 13, 2016. *See Sekou*, 2016 WL 2844832. He therefore filed the instant PCRA petition within sixty days of that decision. *See Commonwealth v. Beatty*, 207 A.3d 957, 963 (Pa. Super. 2019) ("Where a prior petition is pending on appeal, a subsequent petition must be filed within the time limits set forth in [s]ection 9545(b)(2) as measured from the date of the order that finally resolves the appeal in the prior petition, because that date is the first date the claim could be presented.").

Because this Court affirmed his judgment of sentence on August 31, 2005, and he did not appeal that decision, Sekou's judgment of sentence became final on October 1, 2005, following the expiration of the thirty-day period for filing a petition for allowance of appeal to our Supreme Court. *See* Pa.R.A.P. 1113(a); 42 Pa.C.S. § 9543(b)(3). Sekou therefore had one year from that date to file a PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1). As he did not file the instant PCRA petition until July 12, 2016, it is facially untimely. The PCRA court, however, determined that he satisfied the newly-discovered fact exception to the PCRA's time bar and that he was entitled to relief.

In its first and second issues, the Commonwealth argues that the PCRA court erred in finding that Sekou satisfied the newly-discovered fact exception to the PCRA. *See* Commonwealth's Brief at 18-30. The Commonwealth asserts that Attorney Bruno's suspension and his diagnosis with ADHD and depression, roughly a decade after Sekou's trial, do not constitute "new facts" for purposes of the PCRA's timeliness exception, as the facts do not relate to a new claim of ineffective assistance of counsel of which Sekou was previously unaware. *Id.* at 20-21. Instead, the Commonwealth contends that Sekou was bootstrapping Attorney Bruno's suspension and mental health diagnoses to complaints he had already raised regarding Attorney Bruno's representation and the PCRA court erred in granting relief on this basis. *Id.* at 21. The Commonwealth maintains that while the information regarding Attorney Bruno's mental health could have provided additional support for Sekou's

claim that Attorney Bruno was ineffective for failing to meet with him prior to trial, the fact that Attorney Bruno did not meet with Sekou before trial was a fact of which Sekou was aware at that time and during the filing of his first, timely PCRA petition. *Id.* at 24-25.

Furthermore, the Commonwealth challenges the PCRA court's determination that Attorney Bruno was, in fact, ineffective for failing to meet with Sekou prior to trial. *See id.* at 26-30. The Commonwealth argues that the PCRA court ignored evidence indicating that Attorney Bruno met with Sekou around the time of Sekou's preliminary hearing and that Attorney Fulton, Sekou's mitigation counsel, also met with Sekou prior to trial. *Id.* at 26. Additionally, the Commonwealth points out that Attorney Bruno went to meet with Sekou at CFCF only for Sekou to inform him that he would no longer be representing him at trial and that Attorney Henry would instead be representing him. *Id.* The Commonwealth maintains that the PCRA court wrongly faulted Attorney Bruno for leaving that meeting even though Sekou informed Attorney Bruno that he was no longer his attorney. *Id.* at 28-29.

The newly-discovered fact exception to the PCRA's time bar applies where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (quoting 42 Pa.C.S. § 9545(b)(1)(ii)). "The focus of the exception is on the newly[-]discovered facts, not on a newly[-]discovered or newly[-]willing

source for previously known facts." ***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017) (quotation marks and brackets omitted).

In concluding that Sekou's discovery of Attorney Bruno's suspension and mental health conditions satisfied the newly-discovered fact exception to the PCRA's time bar, the PCRA court explained:

> This court determined that [Sekou] testified credibly at the October 4, 2018 evidentiary hearing. [Sekou] indicated that he did not previously know of trial counsel's mental health condition until shortly before he filed the instant timely PCRA [p]etition in 2016. As the Pennsylvania Supreme Court did not release its findings regarding [Attorney Bruno]'s ineffectiveness and mental health until November 13, 2014 and as pro se petitioners are not held to the public records presumption as per ***Burton***, it is clear that [Sekou] has met his burden of exercising due diligence to learn this new fact and that he timely filed his motion recent PCRA [p]etition. Further, as [Attorney Bruno]'s mental health was determined to have been the underlying cause of his misconduct that affected numerous clients, this information would have inevitably changed the outcome of [Sekou]'s prior PCAR, if not the outcome of his original trial. Therefore, this court found that [Sekou] proved by a preponderance of the evidence that this claim met the time-bar exception and is timely.

PCRA Court Opinion, 8/28/2024, at 14-15 (footnote omitted). Additionally, the PCRA court further concluded that, as this was a capital murder case, Attorney Bruno was "per se ineffective … for failing to have a substantive, face-to-face consultation" with Sekou prior to trial. ***Id.*** at 17, 29.

We find no fault with the PCRA court's conclusion Sekou could not have discovered information about Attorney Bruno's suspension and mental health diagnoses sooner than he did in January 2016. That, however, is not "the fact[] upon which the claim is predicated." ***See*** 42 Pa.C.S. § 9545(b)(ii). As

the PCRA court recognizes, Sekou contends that Attorney Bruno rendered ineffective assistance because he failed to meet with Sekou prior to trial. *See* Amended PCRA Petition, 6/23/2017, ¶¶ 17-19. The PCRA court concluded that Attorney Bruno was per se ineffective because he failed to have a substantive, face-to-face meeting with Sekou before trial. *See* PCRA Court Opinion, 8/28/2024, at 17, 29. Assuming, arguendo, that Attorney Bruno did not have a substantive, face-to-face meeting with Sekou before trial and that that this would require a finding that he rendered ineffective assistance, the fact that serves as the predicate for Sekou's ineffectiveness claim is the absence of a pretrial meeting, which has been known to Sekou since January 2004. Indeed, both Sekou and the PCRA court, in its Rule 907 notice, acknowledge this point. *See* Amended PCRA Petition, 6/23/2017, ¶¶ 17-19; *see also* Rule 907 Notice, 6/29/2017. That Sekou later discovered that the Disciplinary Board suspended Attorney Bruno following allegations of misconduct and his diagnosis with ADHD and depression does not change the fact that Sekou was aware that Attorney Bruno did not have a pretrial meeting with him for over twelve years before the filing of the instant PCRA petition. If Attorney Bruno was indeed ineffective for not meeting with Sekou before trial, a fact of which Sekou has always been aware, his suspension and diagnosis with ADHD and depression do not provide a new or different basis to find he was ineffective. Put another way, if Attorney Bruno did not meet with Sekou prior to trial, it was that failing that constituted ineffective

- 14 -

assistance of counsel, and he was ineffective regardless of whether he was suspended or received any mental health diagnoses.

Thus, at best, Attorney Bruno's suspension and mental health issues represent a newly-discovered source or explanation for the previously known fact that Attorney Bruno did not meet with Sekou before trial. *See Burton*, 158 A.3d at 629. Sekou had every opportunity to raise a claim regarding Attorney Bruno's purported failure to meet with him prior to trial in his first, timely PCRA petition, as he raised a different ineffective assistance of counsel claim against Attorney Bruno in that petition. His failure to raise a claim regarding Attorney Bruno's alleged failure to meet with him before trial in his first PCRA petition resulted in waiver of that claim. *See* 42 Pa.C.S. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding").

Based on the foregoing, we conclude that the PCRA court erred in determining that Sekou's discovery of Attorney Bruno's suspension and mental health diagnoses satisfied the newly-discovered fact exception to the PCRA's time bar. Consequently, the PCRA court did not have jurisdiction to entertain or address the merits of Sekou's underlying ineffective assistance of counsel claim regarding Attorney Bruno's alleged failure to meet with Sekou before trial or grant him relief on any of the three dockets before us on appeal. *See Fantauzzi*, 275 A.3d at 994. Based on our disposition of this case, we

- 15 -

need not address the Commonwealth's arguments relating to whether the record supports the PCRA court's determination that Attorney Bruno failed to meet with Sekou prior to trial or whether this constituted per se ineffective assistance of counsel. Likewise, we need not address the issue the Commonwealth raised relating to the PCRA court's grant of relief on the aggravated assault dockets despite Sekou not filing his fourth PCRA petition at those dockets.

Accordingly, we reverse the December 13, 2023 order granting him PCRA relief, vacating Sekou's convictions at the third-degree murder docket, and awarding him a new trial. We also reverse the January 17, 2024 orders applying this same relief to the two aggravated assault dockets. We therefore reinstate all Sekou's convictions and his judgments of sentence at all three dockets and remand this matter to the PCRA court for proceedings consistent with this decision.

Orders reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/29/2025

- 16 -